# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| DAVID MIZELL AND KYONG MIZELL, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 4:18CV1706 HEA<br>) |
| PROFESSIONAL TRANSPORTATION SOLUTIONS, LLC, | )<br>)<br>) |
| Defendant. | ) |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on the verified motion of Plaintiffs David Mizell ("David") and Kyong Mizell ("Kyong") (collectively, "Plaintiffs") for a temporary restraining order (Doc. No. 3). A hearing on Plaintiffs' motion was held on October 12, 2018, at which counsel for Plaintiffs appeared. Plaintiffs' counsel averred that he made reasonable efforts to give Defendant notice of the motion for a temporary restraining order. For the following reasons, the motion will be granted.

## BACKGROUND

The facts summarized herein are set forth in Plaintiffs' Complaint (Doc. No. 1) and Plaintiffs' Supplemental Memorandum in support of their motion for a TRO (Doc. No. 8). Plaintiffs are a married couple and citizens of the State of Florida.

David has COPD and had double bypass heart surgery about three years ago. Defendant Professional Transportation Solutions, LLC ("Defendant") is a Missouri limited liability company with its principal place of business in St. Louis, Missouri. Defendant is a licensed federal motor carrier (US DOT 2950850).

In May 2018, Plaintiffs contacted Liberty Bell Moving Group, LLC, a transportation broker, to arrange for a licensed motor carrier to transport their household goods from their home in Chester, Virginia to their new home in Saint Augustine, Florida. Liberty Bell Moving Group then arranged for Defendant to pick up Plaintiff's household furnishings in Virginia and to move them to Florida.

Defendant agreed to pick up Plaintiff's household furnishings on May 29, 2018. Defendant actually arrived on May 30, 2018. That day, Kyong signed a Bill of Lading with Defendant for the shipment to Florida. Defendant loaded Plaintiffs' furnishings and household goods on its truck. The goods loaded on the truck included Plaintiffs' documents containing their social security numbers, a "lifetime" of personal family photographs, David's military medals and uniform, as well as several of David's health-related items, including his wheelchair, porta potty, and BiPap device, which assists his breathing.

The total estimated charges per the Bill of Lading were $8,383.07. Plaintiffs paid Defendant $1,479.89 for the booking deposit and $1,685.00 for the pickup charge. After deducting the two pre-shipment payments, the remaining total

estimated charge was $5,218.18. Plaintiffs allege that Defendant orally informed them that the anticipated delivery date for the furnishings and household goods was no later than June 5, 2018.

Between June 5, 2018 and July 20, 2018, Plaintiffs, and Christein Stith, their daughter, on their behalf, had been telephoning Defendant and Liberty Bell Moving Group on a daily basis demanding delivery of the household goods and furnishings. Defendant claimed that the truck carrying Plaintiffs' goods had crashed in South Carolina and that it would not deliver the goods until the crash had been investigated by Defendant's insurance carriers.

Defendant delivered Plaintiffs' household goods and furnishings to Plaintiffs' home in Florida on July 20, 2018, and demanded immediate payment of $5,381.59 as a condition for delivery of the goods. July 20 is outside the "standard delivery window" provided in the bill of lading. Plaintiffs refused to pay $5,381.59 on July 20, 2018, contending that they were entitled to an offset because of late delivery, and that they were entitled to inspect the goods for damages before making any payment. Defendant would not allow Plaintiffs to inspect their property, and refused to unload the property until and unless Plaintiffs paid them $5,381.59.

Defendants have not delivered Plaintiffs' property. Plaintiffs claim that as a result of the late delivery, they have incurred expenses on a hotel and minimal

3

furnishings for their home to permit habitation therein. David has not been able to acquire another BiPap device, which he claims is harming his health.

Between July 20, 2018 and October 1, 2018 Defendant demanded payment of $5,381.59, plus additional charges for warehouse handling, storage charges and redelivery charges. Defendant sent Plaintiffs a Notice of Default dated October 1, 2018, claiming an estimated balance due of $10,185.09. This sum includes a $175.00 discount for the initial late delivery. Defendant also states that it intends to sell Plaintiffs' household goods and furnishings on October 18, 2018 if the $10,185.09 balance is not paid by October 18, 2018.

Plaintiffs' Complaint contends that Defendant breached the Bill of Lading and violated the Carmack Amendment, 49 U.S.C. § 14706 by failing to deliver the shipped goods on or before June 5, 2018. In addition, Plaintiffs assert a cause of action for common law conversion and request injunctive relief.

In their motion for a TRO, Plainitffs ask the Court to temporarily enjoin Defendant from selling Plaintiffs' household goods and furnishings.

## DISCUSSION

In determining whether to issue a TRO, the Court must consider the following four factors: (1) the threat of irreparable harm to the movants; (2) the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movants will succeed on the merits;

and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc); *see also Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013). The party requesting injunctive relief bears the "complete burden" of proving that an injunction should be granted. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).

**Likelihood of Success on the Merits**

The Court is satisfied that Plaintiffs are likely to succeed on the merits of their Carmack Amendment claim.

"In adopting the Carmack Amendment, Congress intended to impose a single uniform federal rule upon the obligations of carriers operating in interstate commerce." *Rocky Ford Moving Vans, Inc. v. United States*, 501 F.2d 1369, 1372 (8th Cir. 1974) (citations omitted). "The cases make it clear that when damages are sought against a common carrier for failure to properly perform, or for negligent performance of, an interstate contract of carriage, the Carmack Amendment governs." *Fulton v. Chicago, Rock Island & P. R. Co.*, 481 F.2d 326, 332 (8th Cir. 1973). Late delivery and refusal to deliver are such failures to perform, consequently the Carmack Amendment applies to Plaintiffs' claim.

The bill of lading, as attached to Plaintiffs' motion, provides for a delivery window of up to a maximum of 30 business weekdays from the first available date for delivery. The bill of lading indicates that "5-4-18" (May 4, 2018) is the first

5

available date for delivery. (However, because the pick-up date was May 30, 2018, it appears that May 4, 2018 may have been typographical error, with the correct first available date for delivery being June 4, 2018.) Nevertheless, 30 business weekdays after the latter of the two possible dates is July 16, 2018, putting the actual delivery date of July 20, 2018 outside of the bill of lading's delivery window, and indicating a breach of the bill of lading by Defendant. Plaintiff has pled money damages that resulted from Defendant's late delivery and refusal to deliver. The Court therefore finds Plaintiffs' Carmack Amendment claim likely to succeed on the merits.

**Irreparable Harm to Plaintiffs Absent an Injunction**

"[T]o demonstrate irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 895 (8th Cir. 2013). This Court finds Plaintiffs will suffer irreparable harm if Defendant sells their belongings.

Here, Plaintiffs aver that irreplaceable family items, like photographs, military medals and uniform, and personal paperwork containing sensitive information, are included in their property which is under Defendant's control, and that Defendant intends to sell Plaintiffs' property on October 18, 2018. If Defendant is allowed to sell Plaintiffs' belongings on October 18, Plaintiffs will

suffer the irreparable harm of losing irreplaceable family mementos. Accordingly, the Court finds that Plaintiffs has demonstrated that, absent injunctive relief, they will suffer irreparable harm.

**Balance of Harms**

The Court finds that in contrast to the irreparable harm that Plaintiffs will suffer if injunctive relief is not granted, Defendant will suffer comparatively little harm. If injunctive relief is granted so as to maintain the status quo pending litigation, Defendant's only harm will be maintaining storage for Plaintiffs' property for that period. The potential harm to Defendant will be purely economic, and can be satisfied by the payment of any monies that may be spent on storage. Thus, the harm that Plaintiffs will suffer absent an injunction outweighs any harm that may befall Defendant if its actions are enjoined.

**The Public Interest**

Here, the balance of the equities also favors granting Plaintiffs' motion for injunctive relief. Enjoining Defendant from selling Plaintiffs personal property will not harm the public. Defendant will be able to continue serving the public with its moving business, as usual. Conversely, denying injunctive relief will cause Plaintiffs irreparable harm and undermine the federal statute. Moreover, parties should be able to rely on each other to comply with their agreements and should be able to rely on the courts to enforce agreements when they are breached. The

7

public interest thus weighs in favor of enjoining Defendant as requested by Plaintiffs.

## CONCLUSION

Based upon the foregoing analysis, the Court concludes a temporary restraining order is appropriate.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for a temporary restraining order (Doc. No. 3) is **GRANTED**. The Court hereby orders as follows:

1. That Defendant Professional Transportation Solutions, LLC is hereby enjoined from selling or otherwise disposing of Plaintiffs David and Kyong Mizell's household goods and furnishings;

2. That Plaintiffs shall enter bond in the amount of $500.00 before close of business on October 17, 2018;

3. That this Order shall remain in effect until October 29, 2018 at 4:30 p.m.

Dated this 15th day of October, 2018.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE